**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| Malikie Innovations Ltd. and | § | |
| Key Patent Innovations Ltd., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 1:25-cv-00716 |
| | § | |
| Toast, Inc. | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiffs Malikie Innovations Ltd. ("Malikie") and Key Patent Innovations Ltd. ("KPI") (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this Complaint for patent infringement and damages against Defendant Toast, Inc. ("Toast") and, in support, allege the following:

## PARTIES

1.      Plaintiff Malikie is the successor-in-interest to a substantial patent portfolio created and procured over many years by BlackBerry Ltd., formerly known as Research in Motion Ltd., and its predecessor, subsidiary, and affiliated companies (collectively, "BlackBerry"). Malikie is an Irish entity duly organized and existing under the laws of Ireland. Malikie has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

2.      Plaintiff KPI is the beneficiary of a trust pursuant to which Malikie owns, holds, and asserts the Asserted Patents (set forth below). KPI is an Irish entity duly organized and existing under the laws of Ireland. KPI has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

3.      On information and belief, Defendant Toast Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with a headquarters at 333 Summer Street, Boston, Massachusetts 02210.

4.      On information and belief, Toast and/or its employees or officers direct and/or control the actions of their direct and indirect subsidiaries by, for example, inducing and contributing to the actions complained of herein. Toast and its affiliates are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and/or using of the accused products and services in the United States, including in the State of Texas generally and this judicial District in particular.

## JURISDICTION AND VENUE

5.      Plaintiffs incorporate by reference paragraphs 1-4 herein.

6.      This civil action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. Thus, this is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331, 1332, and 1338(a).

7.      This District has general and specific personal jurisdiction over Toast because, directly or through intermediaries, Toast has committed acts within this District giving rise to this action; transacts and conducts business, directly and/or indirectly, in this District and the State of Texas; and transacts and conducts business with residents of this District and the State of Texas.

8.      Toast has infringed and continues to infringe the Asserted Patents (defined below) within this District and the State of Texas by making, using, selling, licensing, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas, products and services covered by claims in the Asserted Patents, including without limitation products and services that,

when made or used, practice one or more claims of the Asserted Patents. Toast, directly and through affiliates, subsidiaries, and intermediaries, makes, uses, sells, licenses, offers for sale, and/or imports such infringing products and services in or into this District and the State of Texas. Toast regularly conducts and solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from goods and services provided to residents of this District and the State of Texas.

9.      Toast is doing business, either directly or through respective agents, on an ongoing basis in this Judicial District and elsewhere in the United States and has committed acts of infringement in this District. On information and belief, Toast has transacted and, at the time of the filing of the Complaint, is continuing to transact business within this District.

10.      On information and belief, Toast makes, uses, sells, licenses, offers to sell, and/or imports infringing products and services into and/or within this District, has a regular and established place of business, and has the requisite minimum contacts with this District such that this venue is a fair and reasonable and convenient one. On information and belief, Toast has at least 53 employees in this District.

11.      Toast purposefully directs or controls the sale of the accused products and services online and/or in nationwide retailers and wholesalers, including for sale in Texas and elsewhere in the United States, and expects and intends that the accused products and services will be so sold and used in this District.  Toast purposefully places the accused products and services—whether by itself or through subsidiaries, affiliates, or third parties—into a supply chain, knowing that the accused products and services will be sold and used in the United States, including Texas and in this District. Therefore, Toast also facilitates the sale and use of the accused products and services in Texas.

12.     Toast utilizes established distribution channels to distribute, market, offer for sale, sell, service, and warrant infringing products and services to consumers and other users in the United States, including by providing links via their website and online store to consumers, distributors, and solution partners offering such products and services and related products and services for sale.  Such a presence furthers the development, design, manufacture, importation, distribution, sale, and use (including by inducement) of infringing accused products and services in Texas, including in this District.

13.     This Court has personal jurisdiction over Toast pursuant to TEX. CIV. PRAC. & REM. CODE §§ 17.041, 17.042 *et seq*., the Texas Long Arm Statute.

14.     Toast is doing business, either directly or through respective agents, subsidiaries, or intermediaries, on an ongoing basis in this judicial District and elsewhere in the United States and has committed acts of infringement in this District.

15.     Toast is subject to this Court's jurisdiction pursuant to due process and the Texas Long Arm Statute due at least to its substantial business activities in this State and District, including (a) its past and present infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from products or services, including software and online services, provided to customers in Texas.

**WI-FI STANDARD AND PLAINTIFFS' FRAND OBLIGATIONS**

16.     The Institute of Electrical and Electronics Engineers ("IEEE") is a professional association whose activities span a broad range of disciplines, including telecommunications. As part of its activities, the IEEE develops and publishes industrial standards, including standards pertaining to wireless communications.

17.    The IEEE-Standards Association (SA) operates within the IEEE and develops global standards in various industries, including Wi-Fi (802.11) standards. The IEEE 802.11 standards, developed by the IEEE-SA, provide a set of media access control (MAC) and physical layer (PHY) specifications for implementing Wi-Fi. The IEEE-SA requires participants to commit to abide by their Intellectual Property Rights ("IPR") policies, which set forth the rights and obligations of their members. For example, members are required to disclose intellectual property rights including standard essential patents ("SEPs"), potentially standard essential patents, and patent applications relevant to IEEE standards. Further, the IEEE requires members disclosing IPR to indicate, via a Letter of Assurance ("LOA"), whether they will commit to granting implementer members a license under terms that are Fair, Reasonable, and Non-Discriminatory ("FRAND").

18.    Blackberry has been an active participant in the IEEE's development of industry standards, including many of the 802.11 standards. On numerous occasions, Blackberry notified the IEEE in public LOAs that its patents could include Essential Patent Claims with respect to at least the IEEE 802.11-2102, 802.11k, 802.11mb, 802.11n, 802.11p, 802.11r, 802.11s, 802.11u, 802.11v, 802.11w, 802.11y, 802.11z, 802.11aa, 802.11ad, 802.11ae, and 802.11.2 standards. Blackberry further indicated that it would grant a license to patents that could include Essential Patent Claims under terms that are FRAND.

19.    As detailed below, Malikie offered Toast the chance to license its SEPs, including those covering IEEE 802.11 standards, on FRAND terms. Particularly, after notifying Toast of its infringement of numerous patents, including the Asserted Patents, and making numerous attempts to request that Toast engage Malikie in license discussions, Malikie sent Toast a letter on April 25, 2025 in which it offered a specific FRAND royalty rate for all patents essential to the IEEE 802.11

standards or that otherwise fall within the commitments to IEEE made by the owner of the patents at the time. Toast did not respond.

## **PATENTS-IN-SUIT**

20.    Malikie is the assignee of and owns all right and title to U.S. Patent Nos. 8,334,847 ("the '847 Patent"); 8,392,259 ("the '259 Patent"); 8,583,980 ("the '980 Patent"); 8,615,195 ("the '195 Patent"); 8,676,116 ("the '116 Patent); and RE48,212 ("the '212 Patent") (collectively, the "Asserted Patents").

21.    The Asserted Patents were developed by inventors working for BlackBerry and Nortel. BlackBerry developed numerous innovative and diverse technologies, including groundbreaking inventions pertaining to mobile devices and related software and wireless communications technology, among other technology and technological advances. Nortel developed a variety of telecommunications and networking technologies that played a crucial role in the way businesses and individuals interacted in the digital age. Some of these groundbreaking inventions are described and claimed in certain of the Asserted Patents.

22.    The '847 Patent, entitled "System having user interface using object selection and gestures" was duly and lawfully issued on December 18, 2012. A true and correct copy of the '847 Patent is attached hereto as Exhibit 1.

23.    The '847 Patent has been and continues to be in full force and effect since its issuance. Malikie owns by assignment the entire right and title in and to the '847 Patent, including the right to seek damages for any infringement thereof.

24.    The '259 Patent, entitled "Methods and apparatus to obtain transaction confirmation" was duly and lawfully issued on March 5, 2013.  A true and correct copy of the '259 Patent is attached hereto as Exhibit 2.

25.    The '259 Patent has been and continues to be in full force and effect since its issuance. Malikie owns by assignment the entire right and title in and to the '259 Patent, including the right to seek damages for any infringement thereof.

26.    The '980 Patent, entitled "Low density parity check (LDPC) code" was duly and lawfully issued on November 12, 2013.  A true and correct copy of the '980 Patent is attached hereto as Exhibit 3.

27.    The '980 Patent has been and continues to be in full force and effect since its issuance. Malikie owns by assignment the entire right and title in and to the '980 Patent, including the right to seek damages for any infringement thereof.

28.    The '195 Patent, entitled "Mobile wireless communications device having touch activated near field communications (NFC) circuit" was duly and lawfully issued on December 24, 2013.  A true and correct copy of the '195 Patent is attached hereto as Exhibit 4.

29.    The '195 Patent has been and continues to be in full force and effect since its issuance. Malikie owns by assignment the entire right and title in and to the '195 Patent, including the right to seek damages for any infringement thereof.

30.    The '116 Patent, entitled "Electronic device with NFC antenna adjacent display and related methods" was duly and lawfully issued on May 8, 2012.  A true and correct copy of the '116 Patent is attached hereto as Exhibit 5.

31.    The '116 Patent has been and continues to be in full force and effect since its issuance. Malikie owns by assignment the entire right and title in and to the '116 Patent, including the right to seek damages for any infringement thereof.

32.     The '212 Patent, entitled "Structured low-density parity-check (LDPC) code" was duly and lawfully issued on September 15, 2012.  A true and correct copy of the '212 Patent is attached hereto as Exhibit 6.

33.     The '212 Patent has been and continues to be in full force and effect since its issuance. Malikie owns by assignment the entire right and title in and to the '212 Patent, including the right to seek damages for any infringement thereof.

34.     On November 15, 2024, Malikie sent a letter addressed to Toast's General Counsel, Mr. Brian Elworthy, offering a license to Malikie's patents.  The November 15, 2024 letter specifically identified the '847 Patent, the '259 patent, the '195 patent, and the '212 patent, among others.

35.     The November 15, 2024 letter also identified a set of exemplary products that Malikie believes were and are infringing these patents (on a patent-by-patent basis).  Malikie's letter also specifically noted that its portfolio includes patents relating to secure application management, key and certificate management, secure data communication, and digital signatures and that Malikie is willing to offer Toast a license so that it could continue its use of the patented technologies.  The November 15, 2024 letter was sent via courier and e-mail.

36.     On information and belief, Toast received Malikie's November 15, 2024 letter by courier and email.

37.     Malikie followed up on its November 15th letter by emails, including emails sent in November and December 2024, and January, February, March, and April of 2025.

38.     On January 27, 2025, Malikie followed up on its November 15, 2024 letter by email and courier.

39.    Neither Mr. Elworthy nor anyone representing Toast has responded to Malikie's November 15th letter or its January 27th letter, or to any of the numerous emails.

40.    Malikie sent an additional letter on March 31, 2025, identifying the '980 Patent and '116 Patent, and products that Malikie believes were and are infringing these patents.

41.    No one from or representing Toast has responded to the March 31, 2025 letter.

42.    On April 25, 2025, Malikie offered Toast a specific FRAND royalty rate for all patents essential to the IEEE 802.11 standards (including the '980 and '212 Patents) or that otherwise fall within the commitments to IEEE made by the owner of the patents at the time.

43.    Because no one from or acting on Toast's behalf ever responded to Malikie's outreaches, Malikie has been left with no choice but to bring this action to enforce its rights as the owner of valid and valuable patents that Toast is willfully infringing.

## ALLEGATIONS AND ASSERTED PATENTS

44.    BlackBerry was a pioneer in security technologies that have revolutionized the way the world conducts business.  For example, BlackBerry developed numerous innovations around secure data communications that improve the security of transactions and the way payments are processed, and improved the speed and efficiency of point-of-sale terminals.

45.    Nortel was an early innovator in communications, telecommunications, and networking that enhanced the ways that individuals and organizations interact. For example, Nortel developed several improvements to wireless communications that improved the speed, accuracy, and efficiency of transmitting information over a communication channel, including Wi-Fi.

## FIRST CLAIM

### (Infringement of the '847 Patent)

46.     Plaintiffs re-allege and incorporate by reference the foregoing paragraphs of their Complaint.

47.     The '847 Patent is generally directed to systems and methods for providing a user interface for controlling a display using an interface application to provide, in a multilayer display arrangement, a container with interface controls that are selectable based on the magnitude of the motion of a manipulation of the display.

48.     The problem that BlackBerry solved with the '847 Patent was the growing complexity of the virtual interface. The virtual interface included a number of controls and/or images which resulted in a crowded display. "Display crowding may make it difficult for the user to select displayed objects associated with these functions due to their close proximity with one another." Ex. 1, 1:38-41.

49.     Toast has been on notice of the '847 Patent and a specific factual basis for its infringement of the '847 Patent since at least November 15, 2024.

50.     On information and belief, Toast has not taken any action to stop its infringement of the '847 Patent after November 15, 2024.

51.     Toast has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 14 of the '847 Patent, by having made, used, tested, sold, offered for sale, and/or imported hardware and/or software including detecting whether the touch or the contact is in an active area of one of the selectable objects when the comparison indicates that the magnitude of the movement of the touch or the contact is below the threshold value; and executing a function

associated with a selection of the one of the selectable objects. An exemplary claim chart concerning one way in which Toast infringes claim 14 of the '847 Patent is attached as Exhibit 7.

52.     Toast has also indirectly infringed, and continues to indirectly infringe, the '847 Patent under 35 U.S.C. § 271(b) and (c).

53.     Toast has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 14 of the '847 Patent under 35 U.S.C. § 271(b), and continues to do so, by, for example, selling and offering access to its products and services. *See* Exhibit 7.

54.     Toast has also contributed to the direct infringement of at least claim 14 of the '847 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '847 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial non-infringing use. For example, Toast provides, owns, operates, sells, offers to sell, and/or imports products or software including detecting whether the touch or the contact is in an active area of one of the selectable objects when the comparison indicates that the magnitude of the movement of the touch or the contact is below the threshold value; and executing a function associated with a selection of the one of the selectable objects (such as that shown in Exhibit 7) that are not a staple article of commerce and are incapable of substantial non-infringing use.

55.     Toast's infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## <u>SECOND CLAIM</u>

### (Infringement of the '259 Patent)

56.    Plaintiffs re-allege and incorporate by reference the foregoing paragraphs of their Complaint.

57.    The problem BlackBerry solved with the '259 Patent was the need for consumers to obtain transaction confirmation for wireless transactions. Close-proximity communication systems, such as NFC could be used by mobile devices to complete transactions between the consumer and a retailer. Ex. 2, 1:47-52. Because customers using wireless payment technologies typically avoided paper receipts, a solution was needed to confirm transaction completion without a traditional physical receipt.

58.    The '259 Patent is generally directed to methods and an apparatus for obtaining transaction confirmations using the NFC device of a mobile device, establishing an NFC communication link, and receiving transaction confirmation at the NFC device of the mobile device.

59.    Toast has been on notice of the '259 Patent and a specific factual basis for its infringement of the '259 Patent since at least November 15, 2024.

60.    On information and belief, Toast did not take any action to stop its infringement of the '259 Patent after November 15, 2024.

61.    Toast has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 15 of the '259 Patent, by having made, used, tested, sold, offered for sale, and/or imported hardware and/or software including entering an information receiving communication mode of a close-proximity communication device at a Point-of-Sale ("POS") terminal; receiving payment information from a mobile device using the close-proximity communication device; switching the close-proximity communication device of the POS terminal

to a transfer mode; and transferring a transaction confirmation from the POS terminal via the close-proximity device of the POS device in a single instance of the close-proximity communication device of the mobile device that is within range of the close-proximity communication device of the POS terminal. An exemplary claim chart concerning one way in which Toast infringes claim 15 of the '259 Patent is attached as Exhibit 8.

62.     Toast has also indirectly infringed, and continues to indirectly infringe, the '259 Patent under 35 U.S.C. § 271(b) and (c).

63.     Toast has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 15 of the '259 Patent under 35 U.S.C. § 271(b), and continues to do so, by, for example, selling and offering access to its products and services. *See* Exhibit 8.

64.     Toast has also contributed to the direct infringement of at least claim 15 of the '259 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '259 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial non-infringing use. For example, Toast provides, owns, operates, sells, offers to sell, and/or imports hardware and/or software including entering an information receiving communication mode of a close-proximity communication device at a POS terminal; receiving payment information from a mobile device using the close-proximity communication device; switching the close-proximity communication device of the POS terminal to a transfer mode; and transferring a transaction confirmation from the POS terminal via the close-proximity device of the POS device in a single instance of the close-proximity communication device of the mobile device that is within range of the close-proximity communication device of the POS terminals (such as that shown in Exhibit 8) that are not a staple article of commerce and are incapable of substantial non-infringing use.

65.     Toast's infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## THIRD CLAIM

### (Infringement of the '980 Patent)

66.     Plaintiffs re-allege and incorporate by reference the foregoing paragraphs of their Complaint.

67.     The '980 Patent is generally directed to low-density parity checks used in forward error correction techniques, including those used in certain Wi-Fi 802.11 protocols.  Among other benefits, the inventions of the '980 Patent improve the speed, accuracy, and efficiency of transmitting information over a communication channel vis-à-vis prior art techniques.  The inventions of the '980 Patent accommodate larger code rates vis-à-vis the prior art, with a reduction in encoder complexity.

68.     Toast has, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents (and is currently infringing directly and/or under the doctrine of equivalents), one or more claims, including without limitation at least claim 31, of the '980 Patent, by making, using, selling, testing, offering for sale, and/or importing into the United States various Wi-Fi-enabled POS products. An exemplary claim chart demonstrating one way in which Toast infringes claim 31 of the '980 Patent is attached as Exhibit 9.

69.     Toast has been on notice of the '980 Patent and a specific factual basis for its infringement of the '980 Patent since at least March 31, 2025.

70.     On information and belief, Toast did not take any action to stop its infringement of the '980 Patent after March 31, 2025.

71.     Toast has also indirectly infringed, and continues to indirectly infringe, the '980 Patent under 35 U.S.C. § 271(b) and (c).

72.     Toast has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 31 of the '980 Patent under 35 U.S.C. § 271(b), and continues to do so, by, for example, selling and offering access to its products and services, including through its website: https://central.toasttab.com/s/article/Setting-Up-Your-Toast-Go-2-and-Accepting-Payments. *See* Exhibit 9.

73.     Toast has also contributed to the direct infringement of at least claim 31 of the '980 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '980 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial non-infringing use. For example, Toast provides, owns, operates, sells, offers to sell, and/or imports devices compliant with IEEE 802.11 standards (such as that shown in Exhibit 9) that are not a staple article of commerce and are incapable of substantial non-infringing use.

74.     Toast's infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## FOURTH CLAIM

### (Infringement of the '195 Patent)

75.     Plaintiffs re-allege and incorporate by reference the foregoing paragraphs of their Complaint.

76.     The '195 Patent is generally directed to mobile wireless communications devices that use NFC circuitry having a touch activated sensor. The inventions of the '195 Patent enable

NFC devices to conduct various transactions such as mobile payments using NFC on NFC-enabled wireless communications devices only when NFC is required. *See, e.g.*, Ex. 4, 1:41-59. The '195 Patent requires the user to activate the NFC circuit by touching the touch activated sensor located on the device to begin transactions. *See* Ex. 4, 2:60-3:3. Thus, the '195 Patent provides simplicity and ease-of-use for mobile transactions.

77.     Toast has been on notice of the '195 Patent and a specific factual basis for its infringement of the '195 Patent since at least November 15, 2024.

78.     On information and belief, Toast did not take any action to stop its infringement of the '195 Patent after November 15, 2024.

79.      Toast has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 15 of the '195 Patent, by making, using, testing, selling, offering for sale, and/or importing hardware and/or software that enables NFC communications between devices that have a touch activated sensor, such as Toast's POS terminals.  An exemplary claim chart concerning one way in which Toast infringes claim 15 of the '195 Patent is attached as Exhibit 10.

80.     Toast has also indirectly infringed, and continues to indirectly infringe, the '195 Patent under 35 U.S.C. § 271(b) and (c).

81.     Toast has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 15 of the '195 Patent under 35 U.S.C. § 271(b), and continues to do so, by, for example, selling and offering access to its products and services.  *See* Exhibit 10.

82.     Toast has also contributed to the direct infringement of at least claim 15 of the '195 Patent and has knowingly, intentionally actively aided, abetted, and induced others to directly

infringe at least claim 15 of the '195 Patent under 35 U.S.C. § 271(b), and continues to do so, by, for example, selling and offering access to its products and services. *See* Exhibit 10.

83.    Toast has also contributed to the direct infringement of at least claim 15 of the '195 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '195 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial non-infringing use. For example, Toast provides, owns, operates, sells, offers to sell, and/or imports products that enable NFC communications between devices that have a touch activated sensor, such as Toast's POS terminals (such as that shown in Exhibit 10) that are not a staple article of commerce and are incapable of substantial non-infringing use.

84.    Toast's infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## FIFTH CLAIM

### (Infringement of the '116 Patent)

85.    Plaintiffs re-allege and incorporate by reference the foregoing paragraphs of their Complaint.

86.    The '116 Patent is generally directed to an electronic device that includes a housing having a display, wireless transceiver circuitry, and NFC transceiver circuitry. At the time of the '116 Patent, it was difficult to place an NFC antenna effectively because the typical NFC antenna relied on magnetic induction which could suffer from interference from nearby components that could reduce the operational efficiency of the NFC antenna. *See* Ex. 5, 1:34-39. The '116 Patent

overcame this limitation by providing an innovative layout for an electronic device that includes circuitry within the device's housing. *See* Ex. 5, 2:4-17.

87.    Toast has been on notice of the '116 Patent and a specific factual basis for its infringement of the '116 Patent since at least March 31, 2025.

88.    On information and belief, Toast did not take any action to stop its infringement of the '116 Patent after March 31, 2025.

89.    Toast has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1of the '116 Patent, by making, using, testing, selling, offering for sale, and/or importing products that contain a housing with a display opening, processing circuitry, NFC transceiver circuitry, a display having an external surface exposed through the display, and an NFC antenna behind and coupled to the NFC transceiver circuitry. An exemplary claim chart concerning one way in which Toast infringes claim 1 of the '116 Patent is attached as Exhibit 11.

90.    Toast has also indirectly infringed, and continues to indirectly infringe, the '116 Patent under 35 U.S.C. § 271(b) and (c).

91.    Toast has knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '116 Patent under 35 U.S.C. § 271(b), and continues to do so, by, for example, selling and offering access to its products and services.  *See* Exhibit 11.

92.    Toast has also contributed to the direct infringement of at least claim 1 of the '116 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '116 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial non-infringing use. For example, Toast provides, owns, operates, sells, offers to sell, and/or imports products that have a housing

containing processing circuitry, wireless transceiver circuitry, NFC transceiver circuitry, a display, and an NFC antenna positioned within said housing and coupled to NFC transceiver circuitry (such as that shown in Exhibit 11) that are not a staple article of commerce and are incapable of substantial non-infringing use.

93.     Toast's infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

**SIXTH CLAIM**

**(Infringement of the '212 Patent)**

94.     Plaintiffs re-allege and incorporate herein by reference the foregoing paragraphs of their Complaint.

95.     The '212 Patent is generally directed to a method for constructing a low-density parity-check (LDPC) code using a structured base parity check matrix with permutation matrix, pseudo-permutation matrix, or zero matrix as constituent sub-matrices, and expanding the structured base parity check matrix into an expanded parity check matrix.

96.     Toast has been on notice of the '212 Patent and a specific factual basis for its infringement of the '212 Patent since at least November 15, 2024.

97.     On information and belief, Toast did not take any action to stop its infringement of the '212 Patent after November 15, 2024.

98.      Toast has, under 35 U.S.C. § 271(a), directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 20 of the '212 Patent, by making, using, testing, selling, offering for sale,

and/or importing various Wi-Fi enabled products. An exemplary claim chart concerning one way in which Toast infringes claim 20 of the '212 Patent is attached as Exhibit 12.

99.    Toast has also indirectly infringed, and continues to indirectly infringe, the '212 Patent under 35 U.S.C. § 271(b) and (c).

100.    Toast has knowingly, intentionally, and actively aided, abetted, and induced others to directly infringe at least claim 20 of the '212 Patent under 35 U.S.C. § 271(b), and continues to do so, by, for example, selling and offering access to its products and services, including through its website: https://central.toasttab.com/s/article/Setting-Up-Your-Toast-Go-2-and-Accepting-Payments. *See* Exhibit 12.

101.    Toast has also contributed to the direct infringement of at least claim 20 of the '212 Patent under 35 U.S.C. § 271(c), and continues to do so, by, for example, supplying, with knowledge of the '212 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial non-infringing use. For example, Toast provides, owns, operates, sells, offers to sell, and/or imports devices compliant with IEEE 802.11 standards (such as that shown in Exhibit 12) that are not a staple article of commerce and are incapable of substantial non-infringing use.

102.    Toast's infringement has been willful in view of the above and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## **PRAYER FOR RELIEF**

WHEREFORE, Malikie and KPI pray for judgment against Defendant as follows:

103.    That Defendant has infringed each of the Asserted Patents, and unless enjoined, will continue to infringe the Asserted Patents;

104.    That Defendant's infringement of the Asserted Patents has been willful;

105.    That Defendant pays Malikie and KPI damages adequate to compensate for its past infringement of the Asserted Patents, and present and future infringement of the Asserted Patents, together with interest and costs and in no event less than a reasonable royalty under 35 U.S.C. § 284;

106.    That Defendant pays prejudgment and post-judgment interest on the damages assessed;

107.    That Defendant pays Malikie and KPI enhanced damages pursuant to 35 U.S.C. § 284;

108.    That Defendant be ordered to pay ongoing royalties to Malikie and KPI for any post-judgment infringement of the Asserted Patents;

109.    That this is an exceptional case under 35 U.S.C. § 285; and that Defendant pays Malikie and KPI's attorneys' fees and costs in this action; and

110.    That Malikie and KPI be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Malikie and KPI hereby demands a trial by jury on all issues triable to a jury.

Respectfully submitted,

*/s/ Mark D. Siegmund*
Khue Hoang (*pro hac vice* forthcoming)
khoang@reichmanjorgensen.com
**Reichman Jorgensen Lehman & Feldberg LLP**
400 Madison Avenue, Suite 14D
New York, NY 10017
(212) 381-1965

Matthew Berkowitz (*pro hac vice* forthcoming)
mberkowitz@reichmanjorgensen.com
Leaf Williams (*pro hac vice* forthcoming)
lwilliams@reichmanjorgensen.com
**Reichman Jorgensen Lehman & Feldberg LLP**
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
(650) 623-1401

Ariane Mann (*pro hac vice* forthcoming)
amann@reichmanjorgensen.com
**Reichman Jorgensen Lehman & Feldberg LLP**
515 Congress Avenue, Suite 1900
Austin, TX 78701
(650) 623-1401

Of Counsel:

Mark D. Siegmund
State Bar No. 24117055
**Cherry Johnson Siegmund James PC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas   76710
Telephone:  (254) 732-2242
Facsimile:   (866) 627-3509
msiegmund@cjsjlaw.com

*Attorneys for Plaintiffs Malikie Innovations Ltd.*
*and Key Patent Innovations Ltd.*